WILCOX, Appellant, v. McCAIN LAND & LIVE STOCK
COMPANY et al, Respondents.

(159 N. W. 49.)

(File No. 3953.   Opinion filed August 29, 1916.)

1.   Negotiable Instruments—"Renewal," What Constitutes—Renewal, Distinguished from Extension.

A renewal of a note is the giving of a new note in place of the former one, and a contract for renewal contemplates a new note to which the parties are the same; but an agreement for a renewal is not an agreement for an extension. So held, as to the holder, under his receipt referring to a note executed by a corporation maker and by an individual surety, and reciting that the note might be renewed, if interest was paid in full and the corporation was solvent at time of renewal; and held, that the holder was not required to accept a renewal note, except under the conditions named in such receipt, and then only in case the renewal note was executed by all parties who executed the first note.

2.   Evidence—Evidence of Copy of Unmailed Letters—Extension of Note by Interest Payment—Maker's Statement to Holder.

A purported copy of a letter written by the maker to the holder, after a note became due, to the effect that the interest paid to a certain date paid for the first "extension" of the

note; said copy having been found in a letter file of defendant's deceased father, officer of the corporation, maker, accustomed to keep copies of its correspondence, held, not admissible in evidence, it not appearing that the original was ever mailed to plaintiff as claimed, and there was no proper foundation laid for its admission.

3. Evidence—Renewal of Note—Maker's Self-Serving Declaration, Admissibility—Agreement for Extension, Materiality.

In a suit on a note, which the owner had agreed to renew on condition that interest be paid in full, and that makers are solvent at time of renewal, held, that the maker's letter to the holder, reciting that a certain interest payment "pays for the first extension," with a further recital indicating that the maker regarded the conditions in the holder's proposal to renew the note, as having been complied with by payment of interest and embracing the further statement that the maker was "still solvent," was inadmissible, in the absence of any evidence that the holder failed to answer the letter, thus by silence admitting that an extension had been agreed upon, or of the introduction of any answering letter; and there was no evidence upon which to base the claim that the word "renewed" in the holder's letters and receipt was intended to be "extended;" and the letter itself constituted no proof of an agreement for extension; and was immaterial.

4. Negotiable Instruments—Evidence—Extension of Time—Payment of Accrued Interest, as Consideration.

Payment of accrued interest by a maker of a promissory note, is not proof that time for payment of a note was extended.

5. Negotiable Instruments—Discharge of Sureties by Extension—Payment of Accrued Interest, as Consideration.

Extension of time for payment of a note, by maker's payment of interest for an extended period without the knowledge or consent of the sureties was not a sufficient consideration for extension of the time of payment.

6. Appeals—Prejudicial Error—Extension of Note, Consideration—Instructions as to Consideration.

In a suit upon a note, held, that an erroneous instruction that payment of interest, and allowing the maker to pay interest without the knowledge or consent of sureties was a sufficient consideration for an extension, in the absence of any other instructions as to evidence of extension or any instruction which, when read with the instruction on consideration, in effect advised the jury that mere payment of past-due interest was no consideration for an extension; and the instructions were prejudicial.

7. **Negotiable Instruments—Extension of Time—Consideration—Future Interest Payments as Consideration—Conditions Distinguished.**

In a suit upon a note, held, that under an agreement for extension, as distinguished from renewal, future payments of interest were not considerations for extensions but the mere fulfillment of one of the conditions upon which defendants' right to an extension depended.

Appeal from Circuit court, Pennington County. Hon. LEVI McGEE, Judge.

Action by Charles M. Wilcox, against the McCain Land & Live Stock Company, and others, sureties, to recover upon a promissory note. From a judgment for defendant sureties, and from an order denying a new trial, plaintiff appeals. Judgment and order reversed.

*Walter G. Miser, and Buell & Denu,* for Appellant.

*Williams & Sweet,* for Respondents.

(1) To point one of the opinion, Appellant cited: Windhorst v. Bergendahl, 21 S. D. 218, 111 N. W. 544; Niblack v. Champeny, 10 S. D. 165, 72 N. W. 402; 7 Cyc. 875.

(2) To point two of the opinion, Appellant cited: Williamson v. Voedisch Jewelry Co. (S. D.) 152 N. W. 508.

(6) To point six of the opinion, Appellant cited: English v. Landon, (Ill.) 54 N. E. 911; McCormick Harvester Machine Co. v. Rae, (N. D.) 84 N. W. 346, and cases cited.

(7) To point seven of the opinion, Appellant cited: English v. Landon, (Ill.) 54 N. E. 911.

WHITING, J. Defendants were all sued as makers of a certain promissory note. Execution of the note by the corporation as maker was conceded, but such other defendants as appeared answered that they executed such note as sureties, that plaintiff knew the capacity in which they executed such note, and that they were released from any liability upon such note by plaintiff, without their knowledge or consent, granting to the maker an extention of time for payment of such note. Verdict and judgment were for these alleged sureties. This appeal is from such judgment and an order denying a new trial.

But few matters require our attention, and these rest on legal propositions so plain and fundamental that no citation of

authorities or extended discussion is necessary or warranted. If there ever was any agreement for extention of time of payment, it is conceded that the sole evidence thereof is to be found in certain writings. The note was given March 29, 1906, but bore interest at 8 per cent, per annum from January 1, 1906. It was due September 1, 1906. The note was procured by plaintiff through an agent. In the correspondence that led up to the giving and receiving of this note, it appears that the maker or makers of the note desired to give a long-time note, but that plaintiff would not take such a note, but did state that he would take a note for six or eight months, with privilege of *renewal*. On January 1, 1906, the corporation defendant, through one of its officers, advised plaintiff that:

"If you agree in your receipt to grant a renewal, * * * we will * * * execute a note eight months' time at 8 per cent."

Under date of January 2, 1906, plaintiff executed a receipt, to be delivered upon delivery of the note, and which was so delivered. This receipt, among other things, recited:

"The note given may be renewed, providing the interest is paid in full and the McCain Land & Live Stock Company are solvent at time of renewal."

[1, 2] It is this receipt that constitutes the agreement for extension which the answering defendants contend released them from liability. A *renewal* of a note is the giving of a new note in the place of the former one, and a contract for *renewal* contemplates a new note, to which the parties are the same. Plaintiff could not, under his receipt, have been required to have accepted a note as a renewal note, except under the conditions named in such receipt, and then only in case such note, offered as a renewal, was executed by all those who executed the first note. An agreement for a *renewal* is not an agreement for an extension. There is no pretense that there ever was any other agreement, oral or written, for an extension. But it apparently is the theory of respondents that it was extension, and not renewal, that was contemplated by plaintiff and defendant corporation. The only evidence offered to support any such theory other than evidence of the fact that the note was in fact allowed to run, was, first, evidence that interest was paid at irregular periods for some three years, the first payment for nine months, the second for seven

months, the third for seven months, the fourth for nine months, and the fifth for something over four months; and, second, a certain exhibit offered and received in evidence over appellant's objection.

[3, 4] Two questions arise in connection with the receipt of such exhibit: Its competency as evidence; the materially of its contents. The exhibit in question is claimed to be a copy of a letter written by defendant corporation to plaintiff some sixteen months after the note was given and at the time of the second payment of interest. So far as material to our present discussion, said exhibit reads:

"Dear Sir: Your note was presented to us today by the 1st Nat'l Bank we paid the interest up to May 1st $32.20. This pays for the first extension of 8 months. We note that Mr. Bangs failed to indorse the $41.40 paid in Sept. last; also failed to enter the 8 month extension as agreed in our contract with you. We are glad to record that the 'Lord still rains on Box Elder' and 'that the McCain Land & Live Stock Co. is still solvent,' the requirement you made when agreeing to these 8 mo. extensions."

On the day before the trial demand was made on counsel for plaintiff to produce the original of this letter. Plaintiff was a non-resident of the state and not present at the trial. His counsel stated that they had no such letter. One of the answering defendants testified that he found this exhibit, in October, 1913, in the letter file of his father, in whose handwriting it was, that his father was dead, and that it was a copy of a letter addressed and written to plaintiff. The deceased was an officer of defendant corporation, and it was his custom to keep copies of correspondence. There was no proof that the original of this letter was ever mailed to plaintiff.

Plaintiff contends that no proper foundation was laid upon which to base admitting this exhibit in evidence. We deem such contention sound. Furthermore, this exhibit was absolutely immaterial. If "our contract with you" referred to the receipt above mentioned, and respondent concedes it does, it stated an untruth, as such receipt contained no agreement for extension, except through renewal. There is no claim that any new consideration was received upon which a binding extension could be based. If there had been offered evidence that plaintiff had failed to answer

this letter, thus by silence admitting that an extension had been agreed upon; or if an answering letter, conceding that such was the agreement, had been introduced in evidence, there would be something upon which to base the claim that the word "renewed" in the receipt was intended to be "extended." For all that the evidence showed, if such a letter was sent plaintiff, he may have answered denying that he ever agreed to extend the note—that he only agreed to a renewal. Without some evidence in relation to absence of answer or nature of answer, the contents of such exhibit constituted absolutely no proof of an agreement for extension.

[5, 6] The trial court fully and fairly instructed the jury as to the rights of sureties and how they might be released through an extension of time of payment granted their principal; but in regard to proof necessary to establish such an extension such court instructed:

"You are further instructed that if you believe the interest that accrued upon the promissory note in suit was paid by the McCain Land & Live Stock Company, or any one representing that company, such payment of interest of itself is the only evidence required to prove that the time for payment of the said promissory note was extended."

And in regard to consideration necessary to support an agreement for an extension such court instructed:

"If you believe that the plaintiff in this case extended the time for the payment of that note to a date, a definite date, from the time it became due, paid the interest on it, and allowed the McCain Land & Live Stock Company to pay the interest on it without any knowledge or consent of the sureties, should you find that they are sureties, I instruct you that that is a sufficient consideration for an extension of time, if you find that the time was extended to a date certain."

These instructions are both so clearly erroneous that respondent makes no attempt to defend them, only contending that the instructions as a whole were fair to appellant.

[7, 8] There was no other instruction covering the subject-matter of this first instruction, and, while there were other instructions stating that a consideration for extension was necessary there was none which, when read with this second instruction,

would clearly advise the jury that mere payment of past-due interest is no consideration for an extension of time of payment. The materiality of this erroneous instruction is apparent when we remember that there was absolutely no proof of other consideration for an *extension* of time for paying this note.  If there were sufficient facts upon which to claim that the receipt was an agreement for an *extension,* as distinguished from a *renewal,* then future payments of interest were not *considerations* for extensions, but the mere fulfilling of one of the conditions upon which defendants' right to an extension depended.

The judgment and order appealed from are reversed.